UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chad Nicholas Nelson,                              Case No. 23-cv-2122 (JRT/LIB)

        Plaintiff,

v.                                                 ORDER AND
                                                   REPORT AND RECOMMENDATION
Keith Ellison, et al.,

        Defendants.

    This matter comes before the undersigned U.S. Magistrate Judge through a general assignment made under 28 U.S.C. § 636 and upon review of Plaintiff Chad Nicholas Nelson's Complaint, [Docket No. 1]; his Motion to "show cause for a [p]reliminary [i]njunction [and] [t]emporary [r]estraining [order]" (hereinafter "Injunction Motion"), [Docket No. 2]; his Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"), [Docket No. 5]; his Motion seeking appointed counsel ("Counsel Motion"), [Docket No. 7]; and his Motion to have "[c]opy [c]osts added to filing fees" ("Copy Motion"), [Docket No. 8]. Finding no hearing necessary, the Court issues the present Order and Report and Recommendation.

    For the following reasons, the Court denies the Counsel Motion, recommends dismissing the Complaint, and recommends denying the remaining motions as moot.

**I.    Background**

    In April 2017, a Minnesota state-court jury convicted Nelson of one count of second-degree felony murder. See State v. Nelson, No. A17-1429, 2018 WL 3966353, at *1 (Minn. Ct. App. Aug. 20, 2018).[1] The trial court then sentenced Nelson to 150 months of imprisonment. See Id. Nelson

---

[1] The Minnesota Court of Appeals described the case's facts as follows: "On July 1, 2015," Plaintiff "got into an argument at a bar with another patron, O.H. The argument continued into the parking lot. O.H.'s companions, S.H. and J.P., intervened and encouraged O.H. to walk away from" Plaintiff. Plaintiff "got into his truck and began to drive

is presently incarcerated at the Minnesota Correctional Facility in Rush City, Minnesota. (See Injunction Motion [Docket No. 2]).

The Court received the present Complaint on July 13, 2023. (See Id.)[2] It names as defendants one individual—Keith Ellison, Minnesota's attorney general—and five sets of people: the Minnesota District Judges Association ("MDJA"); the "[a]uthors" of the "Trial Handbook for Minnesota Lawyers"; the authors of the "Minnesota Practice Series Criminal Law and Practice"; the "[a]uthors" and "educators" of the "Minnesota District Judges [Criminal] Benchbook"; and "[a]ll Minnesota prosecutors." (See Compl. [Docket No. 1] at 1).[3]

At its root, the Complaint asserts that several recent U.S. Supreme Court decisions—New York State Rifle and Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022); McDonald v. City of Chicago, 561 U.S. 742 (2010); and District of Columbia v. Heller, 554 U.S. 570 (2008)—establish new precedent about an individual's right to self-defense. (See Compl. [Docket No. 1] at 1–2). Plaintiff specifically suggests that under this precedent, he had no "duty to retreat" when faced with the altercation underpinning his conviction. (See Id. at 8–9; note 1 supra). Plaintiff argues that Ellison "appears to be unwilling to apply" this precedent "to review wrongful convictions"—presumably meaning Plaintiff's own conviction. (See Compl. [Docket No. 1] at 3).

As for the other Defendants, Plaintiff claims that the MDJA inappropriately failed to consider this self-defense caselaw when an MDJA committee drafted certain criminal-matter jury

---

out of the parking lot, but then stopped his truck alongside O.H. and continued the argument. No one attempted to block" Plaintiff "from leaving the parking lot. As the argument continued, O.H.'s third companion, R.M., walked up to" Plaintiff's "truck and punched him through the open window." Plaintiff "responded by immediately firing two shots at R.M. with his firearm and driving out of the parking lot. R.M. died as a result of this shooting." Nelson, 2018 WL 3966353, at *1.

[2] The opening filing's caption does not include the word "complaint"; the document's title is "Declaration of Chad Nicholas Nelson with Memorandum of Law." (See Compl. [Docket No. 1]). But Nelson is a pro se litigant, and the Court is obliged to construe a pro se litigant's filings liberally. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) (quoting Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). Given this obligation, the Court construes Plaintiff's opening filing, in his favor, as a complaint.

[3] Citations to filed materials use the page numbers provided by the District's CM/ECF filing system.

instructions. (See Id. at 3–4). Plaintiff further claims that the authors of the various aforementioned Minnesota criminal-law treatises have also failed to account for the alleged self-defense developments in Bruen, McDonald, and Heller. (See Id.). From the Court's read, Plaintiff provides no factual allegations whatsoever about the set of defendants comprising "[a]ll Minnesota prosecutors." (See Id.).

As relief, Plaintiff asks the Court to "enjoin the listed defendants . . . from enforcing any duty to retreat requirement in any Minnesota [c]riminal or [c]ivil prosecution involving self-defense," and to take various steps to make Minnesota law reflect Plaintiff's view of post-Bruen self-defense doctrine. (Id. at 4; see Id. at 4–7).

Since opening the case, Nelson has filed several motions. The Injunction Motion asks for a temporary restraining order and/or a preliminary injunction preventing Defendants from "enforcing any and all duty to retreat requirement in Minnesota self-defense law," and requiring them to "accurately report within the guidance they give . . . what current constitutional self-defense law is." (Inj. Mot. [Docket No. 2] at 1). The IFP Application asks the Court to let Nelson proceed in forma pauperis in the present case. (See IFP Appl. [Docket No. 5]). The Counsel Motion asks the Court to appoint legal counsel to Nelson to represent him in this action. (See Counsel Mot. [Docket No. 7]). Finally, the Copies Motion asks for copies of all of this action's filings, and for the Court to have the "copy costs added to the case filing costs." (Copies Mot. [Docket No. 8]).[4]

## II. Analysis

### A. Counsel Motion

As a threshold point, the Court will address the Counsel Motion.

---

[4] This request is somewhat unclear, but the Court interprets Plaintiff as essentially asking for the copied documents to be sent to him free of charge.

There is no constitutional or statutory right to appointed counsel in civil litigation. See, e.g., Crozier for A.C. v. Westside Cmty. Sch. Dist., 973 F.3d 882, 889 (8th Cir. 2020) (quoting Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996)); Shortymacknifisent v. Beltz, No. 22-cv-766 (DSD/LIB), 2023 WL 4238458, at *11 (D. Minn. June 8, 2023) (citing cases), report and recommendation adopted, 2023 WL 4235040 (D. Minn. June 28, 2023). Whether to appoint counsel in civil proceedings is a decision committed to trial-court discretion. Crozier, 973 F.3d at 890; Shortymacknifisent, 2023 WL 4238458, at *11 (quoting McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997)). Factors to consider include "(1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability [of the] indigent person to present the claims; and (5) the complexity of the legal arguments." Crozier, 973 F.3d at 889 (citing cases); Shortymacknifisent, 2023 WL 4238458, at *11 (quoting Crozier).

In this case, the Crozier factors counsel against appointing counsel. The issues here are not factually or legally complex, Plaintiff has done an adequate job of explaining his factual and legal positions, and this stage of the proceedings presents no potential for conflicting testimony. The Court therefore denies the Counsel Motion.

  **B.**  **Complaint**

    **1.**  **Standards of Review**

Rather than pay this action's filing fee, Plaintiff submitted an IFP Application. That filing indicates that as a financial matter, Plaintiff qualifies for IFP status. But under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a case proceeding IFP] at any time if the court determines that . . . the action . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2).

A case is frivolous when "'it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)); see also, e.g., Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002) (citing Neitzke). With respect to legal frivolity, a matter lacks this arguable basis if it is "based on an indisputably meritless legal theory." McCullough v. Horton, 69 F.3d 918, 919 (8th Cir. 1995) (quoting Neitzke, 490 U.S. at 327); see also, e.g., Parson v. Barney, No. 12-cv-646 (DWF/DJF), 2023 WL 5447287, at *3 (D. Minn. Aug. 24, 2023) (quoting and citing cases), report and recommendation adopted, 2023 WL 6387869 (D. Minn. Sept. 29, 2023). As for factual frivolity, this District's courts routinely find that when a complaint has no factual allegations about a defendant, it is factually frivolous as to that defendant. See, e.g., Lenear v. Coates, No. 23-cv-0831 (ECT/JFD), 2023 WL 4901283, at *2 (D. Minn. Aug. 1, 2023) (citing cases); Bethune v. Holmgren, No. 21-cv-2642 (DWF/TNL), 2022 WL 161574, at *1 (D. Minn. Jan. 18, 2022) (same).

Furthermore, in addition to this Court's § 1915 duties, the Court also must ensure that it has subject matter jurisdiction over matters brought before it. See, e.g., Wilkins v. United States, 598 U.S. 152, 157 (2023) ("Jurisdictional bars . . . 'may be raised at any time' and courts have a duty to consider them sua sponte.") (quoting Henderson v. Shinseki, 562 U.S. 428, 434 (2011)). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

### 2.  Claims Against Ellison

The only allegations that Plaintiff presents about Ellison are that the Minnesota Attorney General's Office, "[led] by Ellison," has not applied Plaintiff's view of proper self-defense jurisprudence "to review wrongful convictions." (Compl. [Docket No. 1] at 3). It is frankly unclear what cause of action Plaintiff is suggesting here. Given the Court's obligation to construe pro se filings liberally, see note 2 supra, the Court, liberally construing his pleadings in his favor, assumes

5

that Plaintiff's argument is that the Attorney General's Office's conduct violates the constitutional due-process rights of persons charged with crimes where self-defense arguments might apply.

But such an argument is unpersuasive. As a preliminary point, litigants generally cannot bring claims directly under the U.S. Constitution. Instead, one must bring such claims under 42 U.S.C. § 1983. See, e.g., Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." (citing cases)); Ingram v. Booth, No. 23-cv-699 (KMM/JFD), 2023 WL 6541807, at *1 (D. Minn. Sept. 15, 2023) (making same point (citing cases, including Azul-Pacifico)).

This leads to a second point: claims against individual defendants under § 1983—like Plaintiff's claims against Ellison—can target them in their individual capacities, their official capacities, or both. See, e.g., Hafer v. Melo, 502 U.S. 21, 25–27 (1991) (discussing differences between individual-capacity claims and official-capacity claims); Gorman v. Bartch, 152 F.3d 907, 914 (8th Cir. 1998) (same (citing Hafer)). The Complaint here does not specify whether Plaintiff is suing Ellison in his individual capacity or his official capacity. (See Compl. [Docket No. 1]). The Eighth Circuit's rule here is clear: if one fails to specify the capacity in which one sues an individual defendant, a court should treat the claims as being official-capacity claims only. See Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (citing Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999)); Crabtree v. Clearwater Cnty. Sheriffs Off., No. 21-cv-2596 (WMW/BRT), 2022 WL 1492546, at *2 (D. Minn. Mar. 3, 2022) (citing cases), report and recommendation adopted, 2022 WL 1261683 (D. Minn. Apr. 28, 2022). It follows that Plaintiff's claims against Ellison here are official-capacity claims.

Ellison is a state official, thus raising the issue of Eleventh Amendment sovereign immunity. When a plaintiff sues an state official in his or her official capacity, the claims are not "against the official" but "rather . . . against the official's office," so are "no different from [claims] against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing cases); see also, e.g., Glasgow v. Nebraska, 819 F.3d 436, 441 n.5 (8th Cir. 2016) (making same point (citing Will)). Plaintiff's official-capacity claims against Ellison boil down to claims against the State of Minnesota itself.

Under the U.S. Constitution's Eleventh Amendment, however, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. While the wording here refers to litigants' suits against "another State," case law is clear that the Eleventh Amendment also bars suits against states by their own citizens. See, e.g., PennEast Pipeline Co., LLC v. New Jersey, 141 S. Ct. 2244, 2258 (2021) (citing Hans v. Louisiana, 134 U.S. 1 (1890)); Parson, 2023 WL 5447287, at *5 (citing PennEast). And the immunity here blocks district-court jurisdiction: under Eleventh Amendment sovereign immunity, "courts may not ordinarily hear a suit brought by any person against a nonconsenting State." Torres v. Tex. Dep't of Pub. Safety, 142 S. Ct. 2455, 2461 (2022) (citing Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991)); Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000) (making same point (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984)).

Nothing in the Complaint suggests that the State of Minnesota has consented to suits like Plaintiff's. This Court thus lacks jurisdiction over any claims this suit purports to bring against the

State of Minnesota—including any official-capacity claims against Ellison. The Court therefore recommends dismissing the Complaint without prejudice to the extent it bring such claims.[5]

### 3. Claims Against MDJA and Treatise Authors

The Court next addresses Nelson's claims against the MDJA—a committee which allegedly drafted certain Minnesota jury instructions—and authors of various Minnesota treatises.

The thrust here appears to be that these authors' failure to adopt and publish Plaintiff's view of self-defense doctrines makes them legally liable to him. Plaintiff fails to point to any legal right or case law which he believes entitles him to a private cause of action against these persons. Plaintiff simply provides no legal authority for this claim. Even liberally construing his pleadings in his favor and drawing all reasonable inferences thereon, Plaintiff fails to offer any statute or constitutional right which provides him a private cause of action against these persons based on their purported failure to adopt Plaintiff's view of self-defense doctrines. Thus, Plaintiff's claims here are patently frivolous.

The Court therefore recommends that the Complaint be dismissed without prejudice as frivolous to the extent it raises claims against these defendants.

### 4. Claims Against "All Minnesota Prosecutors"

Finally, the Court considers Plaintiff's claims against "[a]ll Minnesota prosecutors." These claims are frivolous as well, but here the problem is factual frivolity. Put differently, even liberally construing his pleadings in his favor and drawing all reasonable inferences thereon, Plaintiff's claims against "[a]ll Minnesota prosecutors" are factually frivolous because his Complaint lacks

---

[5] Even if Plaintiff had sued Ellison in Ellison's individual capacity, those claims would almost certainly be nonstarters under the doctrine of prosecutorial immunity. See, e.g., Imbler v. Pachtman, 424 U.S. 409, 420–30 (1976) (discussing doctrine); Sample v. City of Woodbury, 836 F.3d 913, 916 (8th Cir. 2016) (same). The Court warned Plaintiff of this issue in an earlier Order. (See Order [Docket No. 10] at 3 n.2). Plaintiff has since filed objected to the conclusion that prosecutorial immunity might apply here, (see Objs. [Docket No. 15] at 1), but that objection provides no authority undercutting this Court's earlier conclusion about prosecutorial immunity's scope.

any factual allegations regarding relevant actions taken by "[a]ll Minnesota prosecutors" or Minnesota prosecutors generally. As a result, the Complaint is frivolous with respect to any claims against Minnesota prosecutors as a collective. The Court therefore recommends dismissing the Complaint without prejudice as frivolous to the extent it raises claims against Minnesota prosecutors.[6]

### 5. Remaining Motions

The Court's above recommendations concerning the Complaint would, if implemented, lead to the Complaint's dismissal in full. Given that, the Court further recommends denying the Injunction Motion, the IFP Application, and the Copy Motion as moot.

## III. Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Plaintiff Chad Nicholas Nelson's Motion seeking the appointment of counsel, [Docket No. 7], is **DENIED**.

Furthermore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff Chad Nicholas Nelson's claims as alleged against Defendant Keith Ellison be **DISMISSED without prejudice** for lack of subject matter jurisdiction;

2. The remainder of the Complaint be **DISMISSED without prejudice** as frivolous.

3. Plaintiff's Injunction Motion, [Docket No. 2], be **DENIED as moot**;

4. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, [Docket No. 5], be **DENIED as moot**; and

---

[6] Perhaps Plaintiff could have alleged something to try to fill this factual gap—e.g., that Minnesota prosecutors generally handle cases by relying on a self-defense contrary to the one that Plaintiff thinks the Constitution requires. Even if he had, however, his claims would still fail for several reasons—most prominently, the same prosecutorial-immunity issue raised in note 5 supra.

5. Plaintiff's Motion for "copy costs added to filing fees," [Docket No. 8], be **DENIED as moot**.

Dated: October 27, 2023
                                               s/Leo I. Brisbois
                                               Hon. Leo I. Brisbois
                                               United States District Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).